UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>EDWARD RED FEATHER,<br><br>                Defendant. | 5:16-CR-50022-JLV<br><br>REPORT AND RECOMMENDATION |

Pending is Defendant's Motion in Limine to Admit Expert Testimony (Doc. 18). A hearing was held on July 5, 2016. Although Defendant was not personally present, his attorney of record, Stephen Demik, was personally present and represented him. The Government was represented by Assistant United States Attorney Megan Poppen. Three witnesses testified at the hearing. Three exhibits were received into evidence. Both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Admit Expert Testimony be granted.

## JURISDICTION

Defendant is charged in an Indictment with Sexual Abuse in violation of 18 U.S.C. §§ 2242(2) and 1153. The pending Motion was referred to the

Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Chief Judge Jeffrey L. Viken's Standing Order dated March 9, 2015.

## FACTUAL BACKGROUND

On the evening of April 20, 2015, Bureau of Indian Affairs Special Agent ("SA") Darrell Robinson responded to 408 Manderson Housing Road in Manderson, South Dakota for a reported sexual assault. SA Robinson interviewed the alleged victim, Nancy White Face, a/k/a Nancy Kills Enemy, at the residence. Ms. White Face told SA Robinson that the defendant Edward Red Feather had sexually assaulted her. Officers did not find Mr. Red Feather at the scene; he was later located in the area and taken into temporary custody at the Pine Ridge Adult Offenders Facility. Because Mr. Red Feather was intoxicated when he was taken into custody, SA Robinson did not make contact with him that evening. The Adult Offenders Facility subsequently released Mr. Red Feather, and SA Robinson was unable to locate him until January 2016.

In the late morning of January 7, 2016, SA Robinson and SA Gregory Stout approached Mr. Red Feather in the Manderson Housing area and asked to talk to him about Ms. White Face. Mr. Red Feather agreed to speak with the agents and entered their vehicle. The agents did not detain Mr. Red Feather, and informed him that he was free to go at any time. During the interview, Mr. Red Feather informed the agents that he graduated from Pine Ridge High School and was attempting to take some college classes in Pine Ridge. He appeared sober. (Doc. 46 at p. 15).

During the interview, Mr. Red Feather seemed nervous and provided a number of inconsistent or nonresponsive answers to the agents' questions. SA Robinson testified that he told Mr. Red Feather false information to get Mr. Red Feather to open up. Specifically, he falsely told Mr. Red Feather that witnesses saw him lying on top of Ms. White Face. (Id. at p. 31). SA Robinson eventually asked Mr. Red Feather if he put his penis in Ms. White Face's vagina and if he wore a condom. Mr. Red Feather responded that he did. (Id. at p. 17–18). SA Robinson then asked Mr. Red Feather, "It sounds like you made a mistake." Mr. Red Feather responded, "Yes, I did." SA Robinson asked "What was the mistake?" and Mr. Red Feather responded "Whatever she's accusing me of." (Id. at p. 26).

SA Robinson asked Mr. Red Feather several times during the interview if he understood the questions. (Id. at p. 12). Although the agents told Mr. Red Feather false information about the witness reports, they made no promises or threats. The interview lasted approximately forty minutes; when it ended, the agents did not arrest Mr. Red Feather. (Id. at p.16–17, 20).

On February 23, 2016, a grand jury indicted Mr. Red Feather for Sexual Abuse. On April 5, 2016, Dr. Dewey Ertz conducted cognitive testing on Mr. Red Feather. Dr. Ertz administered the Wechsler Adult Intelligence Scale and found that Mr. Red Feather has an IQ of 75, which is at the borderline level placing him in the fifth percentile of intelligence scores, and that his

3

verbal comprehension is at the borderline level, also in the fifth percentile.[1] (Doc. 19-1 at 1–2).

## DISCUSSION

Mr. Red Feather moves the court to admit Dr. Ertz's expert testimony on his IQ and intelligence limitations. Mr. Red Feather argues that if the court determines his confession was voluntary, he should be permitted to introduce evidence allowing the jury to weigh the confession appropriately. The government responds that Dr. Ertz's testimony would minimize the weight of the confession and confuse the jury, and therefore it should be excluded.

### I.  Whether Mr. Red Feather Voluntarily Confessed

Under 18 U.S.C. § 3501(a), the court, outside the presence of the jury, must determine whether a defendant voluntarily confessed before admitting the confession into evidence. If the court determines the confession was voluntarily given, it shall be admitted into evidence. Id.; see Sims v. Georgia, 385 U.S. 538, 543–44 (1967). The government bears the burden of showing by a preponderance of the evidence that the challenged statements were voluntary. United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004).

"The appropriate test for determining the voluntariness of a confession is 'whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will.'" United States v. Meirovitz, 918 F.2d

---

[1] Dr. Ertz testified that "[b]orderline is a range of intelligence scores that are below normal, but not considered to be an intellectual disability . . . . The fifth percentile, if we can represent visually, if we took a hundred people of [Mr. Red Feather's] age and gender and put him in a line, we would be the fifth at the bottom of that line in terms of cognitive skills overall." (Doc. 46 at p. 55).

4

1376, 1379 (8th Cir. 1990) (quoting United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989)).  A statement is voluntary if it is "the product of an essentially free and unconstrained choice by its maker."  Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973).  "On the other hand, a statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination."  LeBrun, 363 F.3d at 724.  The use of suggestive or deceptive questioning tactics does not render a confession involuntary unless "the overall impact of the interrogation caused the defendant's will to be overborne."  United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005) (quoting Jenner v. Smith, 982 F.2d 329, 334 (8th Cir. 1993)).

When assessing the totality of the circumstances, the court considers "the conduct of the officers and the characteristics of the accused."  LeBrun, 363 F.3d at 724.  Relevant characteristics include the defendant's intelligence and mental state.  See, e.g., id. at 726; United States v. Turner, 157 F.3d 552, 555–56 (8th Cir. 1998).  However, low intelligence or impaired mental functioning generally are not determinative of voluntariness without evidence of police misconduct.  See, e.g., Colorado v. Connelly, 479 U.S. 157, 165 (1986); Turner, 157 F.3d at 555 (finding confession voluntary where defendant "was clearly intelligent to understand his rights" even though he was intoxicated with PCP at time of confession and his IQ was in "low-average to borderline range"); United States v. Makes Room For Them, 49 F.3d 410, 415 (8th Cir.

5

1995) (finding confession voluntary although defendant had eighth-grade education and below-average intelligence; officers' "suggestive" questions did not rise to requisite level of coercive activity because no threats or promises were made).

In this case, there is no evidence of police misconduct sufficient to overbear Mr. Red Feather's will.  See Makes Room For Them, 49 F.3d at 415.  Although SA Robinson told Mr. Red Feather false information to elicit a confession, no threats or promises were made, and the false statement in itself did not rise to the level of police misconduct.  See Brave Heart, 397 F.3d at 1041.  Moreover, although Mr. Red Feather has a borderline-range IQ, he stated he understood the agents' questions during the interview.  See Turner, 157 F.3d at 555.  He also appeared intelligent enough to understand his rights.  See id.; Makes Room For Them, 49 F.3d at 414.  For these reasons, Mr. Red Feather's confession was voluntarily given.

**II.   Whether Dr. Ertz's Testimony Is Admissible**

If the court determines a confession was given voluntarily, 18 U.S.C. § 3501(a) requires the trial judge to admit relevant evidence on the issue of voluntariness and to "instruct the jury to give such weight to the confession as the jury feels it deserves under all of the circumstances."  Id.  "[T]he requirement that the court make a pretrial *voluntariness* determination does not undercut the defendant's traditional prerogative to challenge the confession's *reliability* during the course of the trial."  Crane v. Kentucky, 476 U.S. 683, 688 (1986) (internal citation omitted) (emphasis in original).  In order

6

to challenge a confession's reliability, "[a] defendant [is free] to familiarize a jury with circumstances that attend the taking of his confession, including facts bearing upon its weight and voluntariness." Lego v. Twomey, 404 U.S. 477, 485–86 (1972).  While the purely legal question of voluntariness is assigned to the trial judge to resolve, the probative value of a confession is "a matter that is exclusively for the jury to assess."  Crane, 476 U.S. at 688.

The opportunity to be heard "would be an empty one if the [government] were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence."  Id. at 690.  If the court deprives the defendant of the power to describe the circumstances surrounding the confession, he "is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt?" Id. at 689.

The government argues that Mr. Red Feather is attempting to "provide the testimony of Dr. Ertz to discredit [the] confession."  (Doc. 42 at p. 11). According to the government, Mr. Red Feather should neither be permitted to "minimize the weight and effect of the voluntariness of the confession," nor "produce testimony from his purported expert about why he . . . made the statements he made."  Id.  The government's argument directly contradicts Lego and Crane, which explicitly held that the defendant may introduce evidence bearing upon the confession's "weight and voluntariness," Lego, 404

7

U.S. at 477, and attempt to explain "why [the defendant] previously admit[ted] his guilt[.]"  Crane, 476 U.S. at 689.

In support of its argument, the government points to United States v. House, 939 F.2d 659 (8th Cir. 1991), where the trial judge denied the defendant's proposed instruction requesting the jury to completely disregard his confession.  According to the government, House held that "[o]nce the court makes a preliminary determination that the confession is voluntary, then the only requirement is that the defendant be allowed to place the statements in context." (Doc. 42 at p. 11 (quoting House, 939 F.2d at 663)).  However, the government omits the trial court's instruction affirmed by the Eighth Circuit: in accordance with Section 3501(a), "the judge told the jury that they should consider all the circumstances surrounding the statements and give them such weight as they felt appropriate." House, 939 F.2d at 663.[2]  Mr. Red Feather may present Dr. Ertz's testimony to allow the jury to weigh his statements appropriately.

The government further argues Dr. Ertz's testimony should be barred because the subject matter of his testimony "is a matter of common sense" (Doc. 42 at p. 9 (citing United States v. French, 12 F.3d 114, 117 (8th Cir. 1993)), and can be accomplished through cross-examination of SAs Robinson

---

[2] Like the jury instructions delivered in House, § 2.07 of the Eighth Circuit Model Criminal Jury Instructions provide the following guidance on confessions:

> You have heard testimony that [the defendant] [defendant (name)] made a statement to (name of person or agency).  It is for you to decide:
> First, whether [the defendant] [defendant (name)] made the statement; and
> Second, if so, how much weight you should give to it.
> In making these two decisions you should consider all of the evidence, including the circumstances under which the statement may have been made.

and Stout.  (Doc. 42 at p. 11; Doc. 46 at p. 79).  Expert testimony is admissible "only when an expert's specialized knowledge is necessary to assist the trier of fact in understanding the evidence or in determining a fact in issue."  United States v. Felak, 831 F.2d 794, 797 (8th Cir. 1987) (citing Fed. R. Evid. 702); see also United States v. French, 12 F.3d 114, 116 (8th Cir. 1993).  Federal Rule of Evidence 702 embraces "psychiatric and psychological testimony from those who possess specialized knowledge concerning mental aberrations in human behavior, when such knowledge will help the jury to understand relevant issues in the case."  United States v. Barta, 888 F.2d 1220, 1223 (8th Cir. 1989); see also United States v. West, 813 F.3d 619, 624–25 (7th Cir. 2015) (finding that trial court's exclusion of psychologist testimony was reversible error where psychologist would have explained how defendant's low IQ might have affected the trustworthiness of his confession).

     Dr. Ertz's proposed testimony constitutes "relevant evidence on the issue of voluntariness" and will assist the jury in giving the confession its proper weight.  18 U.S.C. § 3501(a).  Dr. Ertz's report details the IQ test and describes Mr. Red Feather's low IQ scores.  This testimony cannot be presented through cross-examination of the special agents.  The agents may describe the interview itself, but they have no specialized knowledge of Mr. Red Feather's IQ limitations, and no training in cognitive abilities.  (Doc. 46 at p. 32).

     For these reasons, Dr. Ertz's testimony is admissible on the issue of the reliability of Mr. Red Feather's confession.  His testimony will aid the jury in assigning the proper weight to the confession under all the circumstances, and

9

can be narrowed to bear strictly on the credibility of the confession. See 18 U.S.C. § 3501(a).

## CONCLUSION

It is respectfully recommended that Defendant's Motion in Limine to Admit Expert Testimony (Doc. 18) be granted.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665 (8th Cir. 1986).

DATED this 21st day of September, 2017.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge